UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KIHARA KIARIE and                                          :
KIHARA KIARIE REVOCABLE TRUST
                                                           :
            Plaintiffs,                                        ORDER
                                                           :
    -v.-
                                                           :   19 Civ. 827 (ALC) (GWG)
DUMBSTRUCK, INC., PETER ALLEGRETTI,
MICHAEL TANSKI, and JEFF TETRAULT,    :

            Defendants.                                    :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

  The Court is in receipt of letters from the parties describing several discovery disputes raised by defendants (Docket ## 39, 45, 47, 51, 52, 53). In brief, defendants seek an order (1) compelling plaintiff to sit for a second deposition, (2) compelling plaintiff's transactional lawyer to sit for a deposition, (3) compelling plaintiff to provide additional information in response to interrogatories, and (4) entering a protective order stating that defendant Dumbstruck, Inc. does not have to produce certain business information. See Docket # 39 at 1; Docket # 45 at 1. We address each of these requests in turn.

Plaintiff's Deposition

  Defendants seek to recall plaintiff for a second limited deposition, explaining that another deposition "is critical to permit Dumbstruck to understand Plaintiff's claims, especially his claims to damages." See Docket # 39 at 2. Specifically, defendants want to question plaintiff on three topics: (1) the 16 investors and 27 customers plaintiff claims he introduced to Dumbstruck; (2) plaintiff's hours worked for Dumbstuck; and (3) how plaintiff calculates his damages. See id. at 2-3. Federal Rule of Civil Procedure 30(a)(2)(A)(ii) requires a party to obtain "leave of court . . . if . . . the deponent has already been deposed in the case" and the court "must grant leave to the extent consistent with Rule 26(b)(1) and (2)." Accord United States v. Town of Oyster Bay, 2016 WL 11265542, at *1 (E.D.N.Y. May 10, 2016). Rule 26(b)(1) allows for the discovery of information that is "relevant to any party's claim or defense and proportional to the needs of the case," while Rule 26(b)(2)(C) lists the factors a court should consider when exercising its discretion. In the context of a second deposition, courts have examined: "(1) whether the second deposition of the witness would be unnecessarily cumulative; (2) whether the party requesting the deposition has had other opportunities to obtain the same information; and (3) whether the burden of a second deposition outweighs its potential benefit." United States v. Prevezon Holdings, 320 F.R.D 112, 115 (S.D.N.Y. 2017) (citation omitted). "The party opposing the second deposition bears the burden of showing that granting the motion would run afoul of Rules 26(b)(1) and (2)." Cedars-Sinai Med. Ctr. v. Ray, 2019 WL 2420045, at *3

1

(S.D.N.Y. June 10, 2019) (citing Judicial Watch, Inc. v. United States Dep't of Commerce, 34 F. Supp. 2d 47, 54 (D.D.C. 1998)).  In allowing leave for a second deposition, "[t]he Court has 'discretion to make a determination which is fair and equitable under all the relevant circumstances.'"  Cedars-Sinai, 2019 WL 2420045, at *3 (quoting United States v. Prevezon Holdings, Ltd., 320 F.R.D. 112, 114 (S.D.N.Y. 2017)).

   Turning to the first topic, plaintiff contends that defendants missed their chance to ask him about customers and investors, noting that "practically all of the names mentioned as potential investors or customers are reflected in Plaintiff's original production."  Docket # 45 at 3 & n.1.  But it is of no consequence that these names were contained in plaintiff's document production because plaintiff apparently does not dispute that the names were not included in any of plaintiff's witness disclosures or answers to interrogatories prior to his deposition.  Thus, defendants had no way of knowing the significance of these names and did not have the opportunity to depose the plaintiff regarding these individuals.  As to plaintiff's hours, we note that it appears plaintiff was working from home in a high-level position yet provided no contemporaneous written records of his hours.  Apparently, after the deposition, plaintiff provided a day-by-day account of his time working for Dumbstruck.  See Docket # 45-1 at 7-26.  Defendants have never had an opportunity to question plaintiff about this account.  As to plaintiff's damages, it appears that defendants did ask plaintiff questions about damages during his first deposition but are unsatisfied with the answers.

   Having considered these matters, the Court concludes that plaintiff has not met his burden of showing that a continued deposition would be inappropriate.  Defendants will be permitted to redepose the plaintiff on the understanding that they must focus their questions on information or documents produced after plaintiff's first deposition — rather than simply asking plaintiff the same questions they asked earlier. Thus, defendants should not repeat any question regarding plaintiff's contentions on damages unless they are keyed to discovery responses produced after plaintiff's deposition.  The deposition shall be for no longer than four hours, not including breaks.

Deposition of Attorney

   Defendants seek to depose plaintiff's transactional attorney, Hillary Hughes.  Docket # 39 at 3-4.  Hughes is a partner at the law firm currently representing the plaintiff although she apparently will not be trial counsel.  Id. at 3.  Hughes was plaintiff's counsel during his employment negotiation with defendants.  Id. at 3; Docket # 45 at 4; Docket # 47 at 2; Docket # 51 at 2.  Defendants want to depose Hughes regarding "any appropriate non-privileged matters relating to her review, preparation and circulation of the transactional documents at issue in this case and her communications with Dumbstruck's attorneys concerning that matter."  Docket # 39 at 3.

   As the Second Circuit has stated, "[c]ourts have been especially concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests, and have resisted the idea that lawyers should routinely be subject to broad discovery."  In re Subpoena Issued to Dennis Friedman, 350 F.3d 65, 70 (2d Cir.2003) (hereafter

"Friedman"). "Despite that concern . . . our Circuit has adopted a 'flexible approach' that affords district courts discretion to permit such discovery." In re Chevron Corp., 749 F. Supp. 2d 141, 162 (S.D.N.Y. 20140) (quoting Friedman, 350 F.3d at 69-72)) aff'd sub. nom. Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393 (2d Cir. 2010). The Second Circuit directs courts to consider "all of the relevant facts and circumstances" including "[1] the need to depose the lawyer, [2] the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, [3] the risk of encountering privilege and work-product issues, and [4] the extent of discovery already conducted." Friedman, 350 F.3d at 72.

Defendants have shown that Hughes has "relevant" information. After all, the discussions between any attorney and her client about issues raised in a lawsuit are "relevant" to the claims in the lawsuit. Indeed, any attorney would be champing at the bit to learn about those discussions. But defendants do nothing to explain what information Hughes has that would not be subject to a claim of attorney-client privilege. Hughes apparently advised plaintiff throughout his negotiations with defendants and defendants do not provide any argument that the communications between Hugues and her client would not be privileged. Thus, it would be a waste of time to conduct a deposition of Hughes as to these discussions.

Hughes apparently negotiated directly with defendants' attorneys regarding plaintiff's employment agreement. But any written documentation regarding these negotiations between the two sides are presumably already available to the defendants. Defendants do not actually assert there were any oral discussions between Hughes and defendants' attorneys. But if there were, defendants have failed to show why information regarding the content of such discussions is not completely available to them from defendants themselves or their attorneys. To the extent defendants wish to know "which versions [of the written draft agreements] [the plaintiff] considers applicable," Docket # 39 at 3, this is a matter that must be determined by means of deposition questions or in an appropriate contention interrogatory to plaintiff — not his attorney. Indeed, defendants have served interrogatories on plaintiffs regarding this topic and they are the subject of a separate discovery dispute discussed below.[1]

Defendants also argue that Hughes has relevant information because Hughes supposedly proposed or agreed during negotiations on behalf of plaintiff that plaintiff would work for a salary of $1 — and yet plaintiff is now arguing that he is entitled to back wages. This is a non sequitur. There is no reason to supposed that Hughes has any non-privileged factual information regarding the $1 proposal. Either it was made to defendants or it was not. That information is just as much in defendants' possession as it is in Hughes's.

Defendants argument that plaintiff has placed his privileged conversations with Hughes "at issue" in this litigation, see Docket # 39 at 4, is meritless. Defendants do not point to any

---

[1] Defendants assert that plaintiff's testimony on this question was "confusing" and relies on a "jumble of unfinished drafts." Docket # 47 at 3 n.4. But Hughes cannot speak for plaintiff as to his contentions in this case. Nor have defendants shown why she would have any non-privileged information as to the meaning of the drafts that would not constitute an inadmissible opinion.

3

manner in which plaintiff has placed his conversations with Hughes at issue — such as by testifying (or planning to testify) about Hughes's advice to him or by testifying that legal advice caused him to take some action in the belief that he was acting legally. See generally Parneros v. Barnes & Noble, Inc., 332 F.R.D. 482, 501 (S.D.N.Y. 2019). Obviously, plaintiff will be precluded from testifying about his attorney's advice and will also be precluded from using Hughes's testimony to support his case-in-chief.[2]

In sum, the deposition of Hughes will not be permitted.

Interrogatory Responses

Defendants seek to have plaintiff amend his interrogatory responses in the following ways: (1) provide the addresses or contact information for witnesses listed in response to Interrogatory 6; (2) identify the agreement referenced in response to Interrogatory 7; (3) identify the milestones referenced in interrogatory 7 and how they were achieved; (4) identify the value or calculation for the claim of quantum meruit referenced in Interrogatory 8; and (5) provide a statement of damages on all claims, which was requested in Interrogatory 4. Docket # 39 at 5. Plaintiff does not discuss these requests in detail other than to say he was "under the distinct impression that [the information provided] was the extent of the information that Defendants were looking for" and "Defendants have provided us with a moving target." Docket # 45 at 5.

Turning to plaintiff's response to Interrogatory 6, plaintiff has provided most of the information asked for in response and does not claim to lack the address or contact information for the witnesses listed. Thus, to the extent the plaintiff has addresses and/or contact information for witnesses listed in Interrogatory 6, he shall provide it within 14 days of the date of this Order. If he does not have it, he shall affirmatively so state in a writing to defendants.

Plaintiff's response to Interrogatory 7 refers to a detailed calculation and a plan to provide an expert to give a more detailed calculation. Given the complex nature of the calculations, the Court accepts that plaintiff may defer the full explication of the calculation to an expert. If plaintiff timely serves an expert report on this topic, defendants will have the chance to depose the plaintiff's expert if they wish. If plaintiff fails to serve such a report, the Court will be open to an appropriate application at that time to determine the effect of the current response. Nonetheless, the plaintiff's response is still faulty in two respects (1) it appears that plaintiff has failed to identify any "documents supporting this alleged obligation," as was requested. Plaintiff shall identify all such documents within 14 days of the date of this Order or shall be precluded from offering them in support of his claims; (2) plaintiff gives no indication of what

---

[2] The Court does not find it improper that plaintiff identified Hughes during his deposition. See Docket # 39 at 4. Hughes plainly has relevant information. The reason defendants cannot obtain the information she has is because it is privileged. Defendants also find it significant that Hughes was identified in initial their disclosures under Fed. R. Civ. P. 26(a)(1) and in their list of witnesses in the Court's scheduling order dated April 30, 2019 (Docket # 29 at 3). See Docket # 39 at 4. But a party cannot defeat attorney-client privilege simply by identifying an attorney as a witness.

"milestones" are being referred to; nor does it appear that this is a matter within the ken of an expert. Plaintiff shall identify these milestones in a supplemental interrogatory response within 14 days of the date of this Order.

Plaintiff's response to Interrogatory 8 similarly refers to the need for an expert report but such an assertion is not justified by logic or anything in plaintiff's submissions. It does not require an expert to state as a factual matter the number of hours plaintiff worked, the appropriate rate of pay, and the wages he should have been paid based on those hours. It also does not require expertise — other than legal expertise which is obviously available now to plaintiff — for plaintiff to state his contention as to the amounts of the other elements of damages that form the basis of this claim. A supplemental response shall be provided within 30 days of this Order.

Defendants also complain that plaintiff has not properly responded to Interrogatory 4 "which seeks a statement of damages on all claims." Docket # 39 at 5. The Court has reviewed what appears to be plaintiff's response, see Docket # 45-5 at 9-10, and finds it inadequate. Plaintiff must provide a complete and comprehensible answer to this question within 14 days of this Order without reference to the "ad damnum" clause and in accordance with the Court's rulings herein. (In other words, plaintiff may refer to a future expert report to the extent permitted herein.)

Request to Dumbstruck for Financial Information

Defendants seek a protective order permitting them to withhold certain financial information. Docket # 39 at 5-6. A good portion of defendants' argument revolves around what the valuation date will be for plaintiff's requests relating to vested stock. See Docket # 47 at 5-6; Docket # 52. The Court will not decide the merits of this question at this stage of the case. Thus, for purposes of this discovery dispute, the plaintiff will not be barred from pursuing discovery to support his claim that he is entitled to damages for failure to deliver stock that vested through July 2019.

Having made this determination, the parties' letters are inadequate to allow the Court to resolve the discovery dispute. The Court cannot determine what non-burdensome discovery is being sought from defendants on valuation and whether defendants can truly make a case that admittedly responsive items should not be produced because a protective order would be inadequate to protect their interests in confidential financial information.

The parties are directed to confer again in an attempt to reach a resolution. They shall discuss each type of information sought separately and in detail. Plaintiff must keep in mind that any discovery sought must be non-burdensome and proportional to the needs of the case. Defendants must keep in mind that it is quite common to produce confidential financial information pursuant to a protective order and that, if no resolution is reached, they will have the burden to make a showing in affidavit form that a "clearly defined, specific and serious injury" would result if they were required to produce otherwise responsive and non-burdensome

information — even pursuant to a protective order — based on a claim that it is confidential. See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014).

If the parties cannot reach an agreement, the Court's premotion conference requirement is waived. Defendants shall file their motion within 7 days of either party indicating to the other that an impasse has been reached on this question.

Conclusion

The parties' applications (Docket ## 39, 45, 47, 51, 52, 53) are resolved as stated herein. Plaintiff shall produce its supplementary responses on the dates set forth in the Order. The parties may extend any deadlines herein by mutual agreement and without Court order.

SO ORDERED.

Dated: April 27, 2020
       New York, NY

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge