UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

KIHARA KIARIE, individually and as trustee of the
KIHARA KIARIE REVOCABLE TRUST,

                                Plaintiff,

    v.

DUMBSTRUCK, INC., PETER ALLEGRETTI,
MICHAEL TANSKI, and JEFF TETRAULT,

                                Defendants,

_____

Case No. 19-CV-827
(ALC)(GWG)

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND

HODGSON RUSS LLP
Attorneys for Defendants Dumbstruck, Inc.,
Peter Allegretti, Michael Tanski, and Jeff Tetrault.
677 Broadway
Albany, New York 12207
Telephone: (518) 465-2333

Of Counsel:
    Christopher Massaroni, Esq.
    Michael D. Zahler, Esq.

    Date: May 29, 2020

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**....................................................................................................................2

**PRELIMINARY STATEMENT** ............................................................................................2

**STATEMENT OF FACTS**......................................................................................................3

    **A. Background**.................................................................................................................3

    **B. The Scheduling Order, Discovery and This Motion** .................................................4

    **C. Plaintiff Has Always Known of the Involvement of Dura and Gibson** ...................5

    **D. Schenectady Supreme Court Petition** ........................................................................8

    **E. Amendment Will Delay the Resolution of the Case and Will Necessitate Further
    Discovery**........................................................................................................................8

**LEGAL ARGUMENT**...........................................................................................................10

**I.**   **THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE IT IS TOO
    LATE, THERE IS NO "GOOD CAUSE" FOR THE MOTION, AND
    DEFENDANTS WOULD BE PREJUDICED** ................................................................10

    **A. Plaintiff is Required to Show "Good Cause" for His Delay** ...................................10

    **B. Plaintiff Cannot Demonstrate "Good Cause" Because He Was Fully Aware of
    Dura's and Gibson's Positions as Directors of Dumbstruck and Their Alleged
    Involvement (if any) in His Hiring and Firing.** ............................................................13

    **C. Defendants Will Suffer Prejudice if Plaintiff is Allowed to Amend His Complaint
    at this Stage of the Litigation.** .....................................................................................15

**II.**  **THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE THE
    PROPOSED AMENDED COMPLAINT IS FUTILE**..................................................17

    **A. Leave to Amend Should Be Denied Where the Proposed Amendment is Futile**...17

    **B. Plaintiff's Proposed Amendment is Futile as to Dura and Gibson** ........................18

**CONCLUSION** ......................................................................................................................19

1

## INTRODUCTION

This Memorandum of Law is submitted on behalf of defendants Dumbstruck, Inc., Peter Allegretti, Michael Tanski, and Jeff Tetrault (collectively "Defendants") in opposition to the motion of plaintiff Kihara Kiarie ("Plaintiff") seeking leave to amend the complaint to join two new defendants. The deadlines to join parties and amend pleadings expired nearly a year ago.

## PRELIMINARY STATEMENT

This action arises out of a failed relationship between Plaintiff (an investment banker) and defendant Dumbstruck, Inc. (a technology start-up company in Schenectady, NY) ("Dumbstruck"). Plaintiff served as Dumbstruck's so-called "Chief Operating Officer" from 2015 until he was terminated in June of 2017. In January 2019, Plaintiff commenced this action against Dumbstruck and three of its executives seeking compensation for his service and damages relating to an investment that he made in the company.

Plaintiff now seeks to join two individuals as defendants – Michael Dura ("Dura") and David Gibson ("Gibson"). However, Plaintiff offers no justification whatsoever for his belated effort to add these individuals as defendants, and there is no such justification. Plaintiff has known about Dura and Gibson and their roles with Dumbstruck since the inception of his relationship with the company. He seeks to add these individuals as defendants solely because he now wants to add "deep pockets" to the case and to drive up the cost of litigation for Defendants.

In making this motion, Plaintiff ignores both (i) the requirements of Rule 16(b) of the Federal Rules of Civil Procedure, and (ii) the deadlines established by this Court in its original scheduling order. Plaintiff has not even made an effort to demonstrate "good cause" for his delay in naming these defendants (as is required under FRCP 16(b)) and he offers no apologies for seeking to join these defendants more than a year after the deadline established by this Court's

scheduling order. Similarly, Plaintiff has done nothing to show that his claims against these individuals have merit.

Defendants will suffer enormous prejudice if Plaintiff is permitted to add two new defendants at this late juncture of the case. Discovery is almost complete and the case is nearly ripe for summary judgment. Allowing Plaintiff to add two new parties, on tenuous claims, will delay resolution of this matter, increase the costs of litigation, and will prevent Defendants from achieving finality so they can proceed with their fledgling business. The Motion should be denied.

## STATEMENT OF FACTS

### A. Background

Dumbstruck is a startup software company in the early stages of business development.[1] Plaintiff is an investment banker who invested $40,000 in Dumbstruck in exchange for two convertible promissory notes, and who later served as Dumbstruck's COO.[2] Plaintiff filed suit in this matter on January 28, 2019.[3] The Complaint asserts two groups of claims against Dumbstruck: (1) claims seeking compensation for his service as COO, and (2) claims arising out of his investment in the company.[4]

The Complaint asserts wage claims not just against the company, but also against its founders Peter Allegretti and Michael Tanksi, and its CEO, Jeff Tetrault.[5] Plaintiff's claims against these individuals are predicated on Plaintiff's assertion that these men were joint employers under

---

[1] *See* Complaint, at ¶ 14, annexed to the Declaration of Christopher Massaroni in Opposition to Plaintiff's Motion for Leave to Amend ("Massaroni Dec.") as **Exhibit "A"**.

[2] *Id*, at ¶¶ 1, 15-16, and 30-32.

[3] *Id*.

[4] *Id*.

[5] *Id*, at ¶¶ 60 and 82.

the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").[6] Defendants have asserted several counterclaims alleging, among other things, that Plaintiff was disloyal to the company.[7]

Plaintiff seeks a huge amount of damages on his claims under the FLSA and NYLL. In his most recent discovery disclosure, Plaintiff seeks $104,617.50 plus attorney's fees and costs for minimum wage and overtime claims under the FLSA, $131,910.23[8] plus attorney's fees and costs for minimum wage and overtime claims under the NYLL, and $1,928,333.33 for retaliation under the NYLL.[9] In addition, Plaintiff seeks an additional $5 million in punitive damages.[10] Thus, Plaintiff seeks to assert personal claims of $7 million against individuals who have not been participating in, or defending, this case.[11]

## B.  The Scheduling Order, Discovery and This Motion

On April 30, 2019, the Court entered its Scheduling Order for this case (the "Scheduling Order").[12] This Scheduling Order states that the "[d]eadline for joining parties or filing amended pleadings" was May 31, 2019 – nearly one year ago.[13] This deadline has never been extended and neither party has ever sought its extension.[14]

---

[6]    *Id*, at ¶¶ 62 and 68.

[7]    *See* Answer and Counterclaim, at ¶ 14, annexed to Massaroni Dec. as **Exhibit "B"**.

[8]    $104,932.73 + 26,977.50 = $131,910.23.

[9]    *See* Pl.'s Second Supplemental Objections and Responses to Defendants' Second Set of Interrogatories, at pgs. 4-5, annexed to Massaroni Dec. as **Exhibit "C."**

[10]   *See* Complaint, at pg. 16, annexed to Massaroni Aff. as Exhibit "A".

[11]   Mike Dura has responded to a non-party witness subpoena, but only as a non-party.

[12]   *See* the Scheduling Order entered April 30, 2019 annexed to Massaroni Dec. as **Exhibit "D".**

[13]   *Id*, at ¶ 3(b).

[14]   *See* Massaroni Dec., at ¶ 9.

This case is in its late stages. Discovery is nearly concluded. The parties have answered dozens of interrogatories; they have exchanged thousands of documents; they have conducted depositions of all parties and Dura; and Plaintiff has already produced his expert report.[15] Defendants want to bring this matter to a conclusion and are already preparing their motion for summary judgment.

Despite this progress in the case, on May 8, 2020 – nearly a year after the deadline for joining parties or filing amended pleadings expired – Plaintiff filed the instant motion for leave to amend his Complaint to add Dura and Gibson as defendants. Plaintiff seeks leave to add Dura and Gibson based upon his contention that they are jointly liable with Dumbstruck as Plaintiff's "employer" within the meaning of the FLSA and NYLL.[16] The Motion argues, simply, that Dura and Gibson qualify as "employers" under the FLSA and NYLL because they were directors of Dumbstruck who were "personally involved, to a significant extent in Plaintiff's hiring, setting his compensation, commenting on Plaintiff's performance and the decision to terminate him."[17] These allegations are conspicuously absent from the proposed Amended Complaint.[18]

### C.  Plaintiff Has Always Known of the Involvement of Dura and Gibson

The motion is not based on any new development in the case. Plaintiff has known from the beginning that Dura and Gibson had some involvement with the company. Before Plaintiff began

---

[15]     *See* Massaroni Dec., at ¶ 3.

[16]     *See* Pl.'s MOL at pgs. 4-5.

[17]     *Id*.

[18]     *See Proposed Amended Complaint*, at 44, annexed to the Affirmation of Maurice W. Heller ("Heller Aff.") as Exhibit "A".

work with Dumbstruck, he was interviewed by Dura and Gibson.[19] Plaintiff testified at deposition as follows:

> A.   At some point I came to Albany for a meeting.
> Q.   When you came to Albany was that the meeting with Peter [Allegretti] and Mike Dura and Dave Gibson?
> A.   And Mike Tanksi.
> Q.   What was the purpose of that meeting?
> A.   It was an interview. They were interviewing me.
> Q.   Interviewing you for the position of COO?
> A.   That's correct . . . .[20]

Thus, Plaintiff's assertion that Dura and Gibson were "personally involved, to a significant extent in Plaintiff's hiring" is based upon information Plaintiff knew at the time he began working for Dumbstruck.

Throughout the time period that he performed work for Dumbstruck, Plaintiff regularly communicated with Dumbstruck's Board of Directors and he was fully aware that Dura and Gibson served on the board.[21] Discovery has revealed multiple documents confirming that Plaintiff worked with both Dura and Gibson while they were on the board. For example, while Plaintiff was COO, he circulated an "Investor Update" from the first quarter of 2016 thanking Dura for agreeing to join Dumbstruck's Board of Directors.[22] On May 30, 2017, Plaintiff wrote an email to Dura and Gibson, stating in relevant part, "Dumbstruck BofD: Per our discussion at the last board meeting . . . ."[23] Attached to that May 30, 2017 email, Plaintiff circulated a document entitled "ACTION BY

---

[19]   *See* Kiarie Dep. Tr., at pgs. 59-60. The relevant excerpts from Plaintiff's deposition transcript are annexed to Massaroni Dec., as **Exhibit "E"**.

[20]   *Id*.

[21]   *See* Declaration of Peter Allegretti ("Allegretti Dec."), at ¶¶ 3-5.

[22]   *See* January/February Investor Update produced by Plaintiff annexed Massaroni Dec., as **Exhibit "F"**.

[23]   *See* the May 30, 2017 email form Plaintiff to Defendants Allegretti and Tanski, and Messrs. Dura and Gibson, annexed to Massaroni Dec., as **Exhibit "G"**.

UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF DUMBSTRUCK, INC", stating in relevant part: "IN WITNESS HEREOF, the undersigned, being all of the directors of the Corporation, do hereby consent and approve the adoption of the foregoing resolutions as of the date first written hereinabove."[24] Signature lines for Dura and Gibson followed.[25] It is beyond dispute that Plaintiff knew Dura and Gibson served on Dumbstruck's Board of Directors prior to the May 31, 2019 deadline for joining parties.

Further, Plaintiff knew that Dura and Gibson were involved in negotiating Plaintiff's compensation in advance of the May 31, 2019 deadline to join new parties because Defendant Allegretti told Plaintiff this was the case in 2015. In June of 2015, Defendant Allegretti emailed Plaintiff:

> Key, just a head[s] up that Mike [Tanski] and I spent some time yesterday going through the terms you proposed and came out very much on the same page. I also spoke with David [Gibson], the third board member, and came out very nearly on the same page with him as well . . . so that's good!
>
> The one holdout I still need to speak to is Mike Dura, our investor / advisor from the private equity world. He's one of my closest advisors. We should speak later today or tomorrow morning.[26]

Dura attended the meeting at which Plaintiff was terminated.[27] Thus, Plaintiff has always known of the new allegation that he now seeks to interject into this case – that Dura was "personally involved" in his termination.[28]

---

[24] *See* the ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF DUMBSTRUCK, INC. annexed to Massaroni Dec., as **Exhibit "H"**. (emphasis included in original).

[25] *Id.*

[26] *See* the email chain between Plaintiff and Defendant Allegretti from June 2015 annexed to Massaroni Dec., as **Exhibit "I"**.

[27] *See* Kiarie Dep. Tr., at pg 197, annexed the Massaroni Dec., as Exhibit "E".

[28] *See* Pl.'s MOL at pgs. 4-5.

Despite being aware of all the newly raised allegations against Dura and Gibson since the inception of this matter, Plaintiff offers no reason as to why he let this case progress to near conclusion before seeking to add them as defendants.

### D.  Schenectady Supreme Court Petition

It is also notable that, from the outset of this case, Plaintiff has had his sights set on pursuing individual owners of Dumbstruck. In February 2019, Plaintiff filed a petition in New York State Supreme Court, Schenectady County, seeking disclosure of the identity of the ten largest shareholders of the company under BCL § 630.[29] In that petition Plaintiff claimed that he needed that information in order to identify potential defendants under his wage claims.[30] Of course at that time, Plaintiff also knew that Dura and Gibson were substantial investors in Dumbstruck. As he was fishing around to identify investors, Plaintiff was clearly considering adding additional individuals as defendants to this action. Yet he waited nearly a year before settling on Dura and Gibson as the victims of his newly conjured claims.

### E.  Amendment Will Delay Resolution of the Case and Necessitate Further Discovery.

As set forth above, if Dura and Gibson are added to this matter, they will face personal exposure that exceeds $7 million. Given the magnitude of the claims, Dura and Gibson will surely launch a vigorous defense to the claims and they will no doubt explore the retention of separate counsel for that purpose.

As set forth below, the claims against them seem to be on shaky ground, at best, and are dependent on facts unique to their circumstances. As a result, Dura and Gibson will surely consider advancing pre-answer motions to dismiss focused on the defenses unique to the claims against

---

[29]     *See* the Verified Petition annexed to Massaroni Dec. as **Exhibit "J"**.

[30]     *Id*, at ¶ 9.

them. If this is unsuccessful, they will undoubtedly pursue their own discovery. They will have every right to demand that Plaintiff (and for that matter, other defendants) respond to interrogatories, document demands, and requests for admissions. In addition, they will surely seek a deposition of Plaintiff conducted by their own counsel and focused on the claims against them. They may also seek to depose other parties and non-parties. Quite simply, these defendants – when faced with personal exposure of $7 million – will have the right to utilize all procedural defenses and discovery devices available under the Federal Rules of Civil Procedure.

All of this will delay the conclusion of the case. The parties have already litigated this case for more than a year. Discovery is almost complete and the case is nearly ripe for summary judgment.[31] The Defendants vigorously deny the allegations that have been hanging over their company since January 2019. The pendency of the case is a mark against the company. It makes fund raising difficult and it impairs the ability of the company to move forward to profitability. This case must come to conclusion, and the proposed amendment will delay this.

For the reasons set forth herein and the papers submitted herewith, Defendants request that the court deny Plaintiff's Motion.

---

[31]     *See* Massaroni Dec., at ¶ 3.

**LEGAL ARGUMENT**

### I.   THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE IT IS TOO LATE, THERE IS NO "GOOD CAUSE" FOR THE MOTION, AND DEFENDANTS WOULD BE PREJUDICED.

The Court should deny Plaintiff's Motion because (i) the deadline for joining new parties and amending pleadings passed nearly a year ago on May 31, 2019, (ii) Plaintiff's motion does not demonstrate "good cause" for the delay, and (iii) Defendants would be prejudiced if this case was drawn out further and they are deprived of bringing this case to a conclusion. Plaintiff's moving papers wholly ignore the Rule 16 standard and do not even contend that "good cause" is present here. Simply put, the legal standard advanced in Plaintiff's moving papers is wrong. Moreover, Plaintiff cannot demonstrate "good cause" because Plaintiff was well aware of the facts supporting his claims against Dura and Gibson prior to the expiration of the May 31, 2019 deadline for joining new parties.

#### A.  Plaintiff is Require to Show "Good Cause" for his Delay.

Federal Rule of Civil Procedure ("Rule") 16(b) provides that a scheduling order "must limit the time . . . . to amend the pleadings." *Fed. R. Civ. P. 16(b)(4)*. The policy behind this rule is to "assure[] that at some point both the parties and the pleadings will be fixed." *Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment.* Thus, when a party seeks to amend the pleadings after the date set by the District Court has already passed, the "good cause" standard of Rule 16(b) applies, not the standard more lenient of Rule 15(a). *See Parker v Columbia Pictures Indus.*, 204 F3d 326, 340 (2d Cir 2000).

Compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis. *See Perfect Pearl Co., Inc. v Majestic Pearl & Stone, Inc.*, 889 F Supp 2d 453, 457 (SDNY 2012). The burden of demonstrating good cause rests with the movant. *See Ritchie Risk-Linked Strategies*

*Trading (Ireland), Ltd. v Coventry First LLC*, 282 FRD 76, 79 (SDNY 2012). Notably, not a single case in Plaintiff's memorandum of law discusses the relationship between Rules 15 and 16 or the requirement that a Plaintiff demonstrate "good cause" for failing to seek leave prior to the expiration of the deadline set forth in the Scheduling Order.

The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order. *See Parker*, 204 F3d at 340. Diligence is present where the moving party demonstrates that despite its best efforts, the deadline to amend the pleadings could not have been reasonably met. *Id*; *see also Rent-A-Ctr., Inc. v 47 Mamaroneck Ave. Corp.*, 215 FRD 100, 104 (SDNY 2003). In contrast, "a party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Perfect Pearl Co., Inc.*, 889 F Supp 2d at 457 (internal citations omitted).

This standard is commonly invoked to preclude late amendments in precisely this type of case. In *Augstine v AXA Fin., Inc.*, an employee plaintiff sought leave after expiration of the deadline in the scheduling order to add her supervisors and other corporate employees as defendants. *See Augustine v AXA Fin., Inc.*, 07 CIV. 8362, 2008 WL 5025017, at *2 (SDNY Nov. 24, 2008). The plaintiff argued that these individuals were jointly liable as "employers" under the FLSA and Family Medical Leave Act ("FMLA"). *Id*. Judge Sweet denied leave to add these individuals as defendants because the plaintiff was in possession of sufficient facts to plead that the proposed individual defendants had "substantial control over the aspects of the employment alleged to have been violated" prior to the expiration of scheduling order's deadline to add additional parties. *Id*. Thus, the Court held that the plaintiff lacked "good cause" to amend beyond the deadline because she failed to exercise "diligence." *Id*.

While diligence is the primary consideration in determining whether "good cause" is present, the Court may also consider whether permitting amendment will prejudice defendants given the stage of the case. *Id*. In gauging prejudice, the Court examines, among other factors: (1) whether the amendment would require the nonmoving party to expend significant additional resources to conduct discovery and prepare for trial, and (2) whether the amendment will significantly delay resolution of the dispute. *See Ruotolo v City of New York*, 514 F3d 184, 192 (2d Cir 2008). However, while the Court may consider prejudice to the nonmoving party as a reason to deny leave, "the absence of prejudice to the nonmoving party cannot alone fulfill the good cause requirement." *See Augustine*, 07 CIV. 8362, 2008 WL 5025017, at *2 (SDNY Nov. 24, 2008).

Here, the Court must deny Plaintiff's Motion because Plaintiff does not, and cannot, demonstrate good cause. The proposed amendment rests upon information that Plaintiff knew, for years, in advance of the deadline to add parties. In addition, Defendants will suffer undue prejudice if two new parties are added at this juncture of the case. Moreover, the proposed Amended Complaint fails to state a claim against Dura and Gibson. Due to the futility of the proposed Amended Complaint, Dura and Gibson, if added, would surely move to dismiss. If their motion were unsuccessful, Dura and Gibson would seek to avail themselves of all discovery available to them under the Federal Rules of Civil Procedure because Plaintiff seeks judgment in this matter exceeding $7 million. Thus, adding Dura and Gibson will unduly prejudice Defendants by significantly delaying the resolution of this matter.

**B. Plaintiff Cannot Demonstrate "Good Cause" Because He Was Fully Aware of Dura's and Gibson's Positions as Directors of Dumbstruck and Their Alleged Involvement (if Any) in His Hiring and Firing.**

Plaintiff cannot demonstrate "good cause" because he was fully aware of Dura's and Gibson's positions as directors of Dumbstruck and their alleged involvement in his hiring, firing, and compensation negotiations, prior to the expiration of the May 31, 2019 deadline to join new parties or file amended pleadings. Plaintiff seeks leave to add Dura and Gibson as defendants based upon his contention that they were his "employer" within the meaning of the FLSA and NYLL, but his proposed amended complaint makes no factual allegations to support the contention.[32] In his memorandum of law, Plaintiff argues that Dura and Gibson were directors of Dumbstruck who were "personally involved, to a significant extent in Plaintiff's hiring, setting his compensation, commenting on Plaintiff's performance and the decision to terminate him."[33]

However, these allegations are not based on any newly discovered evidence. Plaintiff knew that Dura and Gibson were directors of Dumbstruck long before the expiration of the May 31, 2019 deadline. In fact, he knew this throughout his involvement with Dumbstruck. For the entire time Plaintiff performed work for Dumbstruck, he communicated with Dumbstruck's Board of Directors and was fully aware of their identities.[34]

Just by way of example, the January/February 2016 Investor Update produced by Plaintiff lists in the "Thank Yous" section, "Mike Dura for continuous counsel and advice on fund raising and officially agreeing to join our board."[35] On May 30, 2017, Plaintiff wrote an email to Dura

---

[32]     *See* Pl.'s MOL at pgs. 4-5.

[33]     *Id*.

[34]     *See* Allegretti Dec., at ¶¶ 3-5.

[35]     *See* January/February Investor Update produced by Plaintiff annexed Massaroni Dec., as Exhibit "F".

and Gibson, stating in relevant part, "Dumbstruck BofD: Per our discussion at the last board meeting . . . ."[36] Plaintiff attached to that email a document entitled "ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF DUMBSTRUCK, INC", stating in relevant part: "IN WITNESS HEREOF, the undersigned, being all of the directors of the Corporation, do hereby consent and approve the adoption of the foregoing resolutions as of the date first written hereinabove."[37] Signature lines for Dura and Gibson followed.[38] Thus, it is beyond dispute Plaintiff knew Dura and Gibson were members of Dumbstruck's Board for years in advance of the May 31, 2019 deadline to join them as defendants.

Similarly, Plaintiff's allegation that Dura and Gibson were personally involved in his hiring is not based upon new information. At deposition, Plaintiff testified that Dura and Gibson interviewed him for Dumbstruck's COO position.[39] Likewise, Plaintiff has always known that Mr. Dura was "personally involved" in his termination because Mr. Dura was present at the meeting where Plaintiff was terminated.[40] Plaintiff has also always known that Dura and Gibson were involved in negotiating Plaintiff's compensation because Mr. Allegretti told Plaintiff this was the case.[41]

---

[36]   *See* the May 30, 2017 email form Plaintiff to Defendants Allegretti and Tanski, and Messrs. Dura and Gibson, annexed to Massaroni Dec., as Exhibit "G".

[37]   *See* the ACTION BY UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS OF DUMBSTRUCK, INC. annexed to Massaroni Dec., as Exhibit "H". (emphasis included in original).

[38]   *Id*.

[39]   *See* Kiarie Dep. Tr., at pgs. 59-60 annexed the Massaroni Dec., as Exhibit "E".

[40]   *See* Kiarie Dep. Tr., at pgs. 197-198 annexed the Massaroni Dec., as Exhibit "E".

[41]   *See* the email chain between Plaintiff and Defendant Allegretti from June 2015 annexed to Massaroni Dec., as Exhibit "I".

It is beyond dispute that Plaintiff's proposal to add Dura and Gibson as defendants rests on information that Plaintiff knew, or should have known, long in advance of the May 31, 2019 deadline. The Court need go no further and should deny Plaintiff's Motion on this basis alone.

## C. Defendants Will Suffer Prejudice if Plaintiff is Allowed to Amend His Complaint at This Stage of the Litigation.

Defendants will suffer undue prejudice if Plaintiff is permitted to add Dura and Gibson because such an amendment will greatly delay resolution of the dispute and will require Defendants to expend significant additional resources to conduct discovery and prepare for trial. Discovery is nearly complete and this case will be ripe for summary judgment imminently. Adding two new defendants at this juncture will delay resolution of this case and increase the costs of litigation.

Plaintiff's presumption that Dura and Gibson will choose to be represented by Defendants' counsel is unsupported conjecture.[42] Defense counsel's representation of Mr. Dura at deposition for the limited purpose of him providing testimony as a non-party witness does not mean that Mr. Dura will retain this firm as counsel should he be added as a defendant exposed to substantial personal liability in excess of $7 million.[43]

Plaintiff's assertion that Gibson will "presumably" choose Defendants' law firm to represent him in a case where his personal exposure exceeds $7 million also has no support.[44] Plaintiff has neither deposed Mr. Gibson nor sought documents from him.

---

[42]    See Pl.'s MOL, at 5.

[43]    See Pl.'s Second Supplemental Objections and Responses to Defendants' Second Set of Interrogatories, at pgs. 3-5, annexed to Massaroni Dec., as Exhibit "C".

[44]    See Pl.'s MOL, at 5.

Given the magnitude of the FLSA and NYLL claims that Plaintiff seeks to assert against Dura and Gibson, their defense counsel will surely mount a vigorous defense focused upon the facts and circumstances peculiar to the claims against each Dura and Gibson. This will likely include a pre-answer motion to challenge the sufficiency of the complaint, and if the pre-answer motion is not granted, counsel for Dura and Gibson will surely seek to conduct discovery on all issues in the case. They will also surely avail themselves of paper discovery requests including interrogatories, document requests and requests for admissions, and they may conduct depositions of both parties and non-parties. Quite simply, an amendment to add new parties in a case of this magnitude will turn the clock back on this case and will require full litigation and discovery on the new claims.

The delay will not only add unnecessary expense to Dumbstruck and to the individual defendants, it will also delay the conclusion of the case. Discovery is nearly concluded in this matter and the case will be ripe for summary judgment shortly. Dumbstruck is anxious to bring the case to an end. The mere pendency of the case impairs Dumbstruck from going forward with its new business and its effort to achieve profitability.[45]

Plaintiff knew, or should have known, all of the information upon which his proposed amendment is based in advance of the deadline to add parties. Defendants should not be forced to incur further litigation costs arising from Plaintiff's change of strategy for this case.

---

[45]        *See* Allegretti Dec., at ¶ 6.

## II.   THE COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE THE PROPOSED AMENDED COMPLAINT IS FUTILE.

Plaintiff cavalierly assumes that the new claims have merit and will require no additional discovery, but this is not the case. The proposed Amended Complaint fails to state a claim against Dura and Gibson. Defendants will suffer undue prejudice if Plaintiff is permitted to assert futile claims against Dura and Gibson because they will surely consider pre-answer motions to dismiss and defend the case with vigor. These actions will delay resolution of this matter and drive up the costs of litigation unnecessarily.

### A. Leave to Amend Should Be Denied Where the Proposed Amendment is Futile.

Even under Rule 15, leave to amend should be denied where the amendment is futile. *See Foman v Davis,* 371 US 178, 182 (1962). Proposed amendments are futile where they would fail to state a claim under Rule 12(b)(6). *See IBEW Local Union No. 58 Pension Tr. Fund and Annuity Fund v Royal Bank of Scotland Group, PLC*, 783 F3d 383, 389 (2d Cir 2015). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v Twombly*, 550 US 544, 555 (2007).

Thus, while the court must accept as true all of the allegations in the pleadings, that principle does not apply to legal conclusions. *See Fischkoff v Iovance Biotherapeutics, Inc.*, 339 F Supp 3d 408, 413 (SDNY 2018). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and thus the Court's first task is to disregard any conclusory statements. *Id* (*quoting Ashcroft v Iqbal*, 566 US 662, 678 (2009)). In addition, since a motion to dismiss challenges only the face of the pleading, the Court must limit

its analysis to the four corners of the complaint. *Kermanshah v Kermanshah*, 580 F Supp 2d 247, 258 (SDNY 2008).

**B. Plaintiff's Proposed Amendment is Futile as to Dura and Gibson.**

Plaintiff's Motion should be denied because a review of the four corners of Plaintiff's proposed Amended Complaint reveals that it is futile as to Dura and Gibson. Aside from the caption, Plaintiff's 99 paragraph proposed Amended Complaint only references Gibson in three paragraphs. Paragraph 13 of the proposed Amended Complaint states that Gibson resides in Slingerlands, New York. Paragraphs 64 and 70 state the legal conclusion that Gibson was Plaintiff's employer within the meaning of the FLSA and NYLL. Aside from his address, the proposed Amended Complaint contains <u>no</u> factual allegations concerning Gibson.

The proposed Amended Complaint is similarly silent concerning the factual allegations against Dura. Aside from setting forth his address and stating in a wholly conclusory fashion that he was Plaintiff's employer within the meaning of the FLSA and NYLL, the only reference to Dura in the proposed Amended Complaint is that he was present at the meeting where Dumbstruck terminated Plaintiff.[46] These threadbare allegations and legal conclusions are insufficient to state a claim against Dura.

The claims against Dura and Gibson depend upon the involvement of these individuals in the underlying events. They are not "employers" under the FLSA or NYLL simply because Plaintiff now alleges as much in his proposed Amended Complaint. Thus, the proposed Amended Complaint fails to state a claim against Dura and Gibson and Plaintiff's Motion should be denied as futile.

---

[46]     *See Proposed Amended Complaint*, at 44, annexed to the Affirmation of Maurice W. Heller ("Heller Aff.") as Exhibit "A".

## <u>CONCLUSION</u>

For all these reasons, Defendants respectfully request that the Court deny Plaintiff's motion

for leave to amend his Complaint.

Dated: May 29, 2020

**HODGSON RUSS LLP**
Attorneys for Relief Defendants
*Dumbstruck, Inc., Peter Allegretti, Michael Tanski,*
*and Jeff Tetrault.*

By:

Christopher Massaroni, of counsel
Michael D. Zahler, of counsel
677 Broadway, Suite 301
Albany, New York 12207
518.465.2333