# EXHIBIT G

 Gmail

Key Kiarie <kkiarie@gmail.com>

## Dumbstruck: Doctored Apps Merger Agreement and Board Resolution
3 messages

**Key Kiarie** <key@dumbstruck.com>   Tue, May 30, 2017 at 7:25 PM
To: David Gibson <d10gibson@gmail.com>
Cc: Peter Allegretti <peter@dumbstruck.com>, Mike Tanski <mike@dumbstruck.com>, Mike Dura <mfdura@hotmail.com>
Bcc: kkiarie@gmail.com

Dumbstruck BofD:

Per our discussion at the last board meeting and the various follow on discussions/edits to the proposed Doctored Apps merger with Dumbstruck, please find attached the following:

1.) Doctored Apps Merger Board Resolution

2.) Doctored Apps Merger Agreement (clean)

3.) Doctored Apps Merger Agreement (redline)

I am available for questions, comments, issues, perspective at your convenience.

I am suffering a slight fever today, so I will likely go offline around 11:00PM tonight, but will be available in the morning.

Thanks. . . .

KEY

key kiarie


On Tue, May 23, 2017 at 12:38 PM, Key Kiarie <key@dumbstruck.com> wrote:
> David,
>
> Please see a response to your questions/observations that the lawyer and I debated, discussed and left open for further discussion/observation.
>
> Please let me know if this makes sense. I have prepared all of the conversion documents (Convertible Note 1) and updated the cap tables to reflect the new decision on the merger with Doctored Apps. I would like to share the merger agreement with overlap investors of Convertible Note 1 at the same time. That being said, I will not hold up distribution of the conversion docs for this merger as we are running against the clock.
>
> Thanks. . . .
>
> KEY
>
>
>
> Agreement and Plan of Merger
>
>     4.(a) and 5.1.(c) why "all" rather than "representing 80% of the Doctored Apps Investment" or something similar? That would prevent some small investor from thinking they can hold the merger hostage in order to extract special consideration for ransom.

DD: The provisions of 4(a) and 5.1(c) are drafted in favor of Dumbstruck. Although Dumbstruck is likely permitted under the applicable statutes to proceed with the merger if less than 100% of the members of Doctored Apps approve the merger, in my opinion the approach that is the most favorable to Dumbstruck is to require that 100% of the members of Doctored Apps consent to the merger and also execute and deliver the relevant documents.

This approach does not empower a "holdout" to prevent the closing of the merger or to force a renegotiation (assuming the merger is approved by the minimum number of members of Doctored Apps required). If one or more members object, then Dumbstruck (and Doctored Apps) at that time can consider whether it desires to amend the Agreement and Plan of Merger to allow for a lesser percentage of approvals as a condition to closing, in which case the Agreement can be amended to incorporate this change, or Dumbstruck (or Doctored Apps) can elect to abandon the merger. If a lone member of Doctored Apps thinks he or she can block the merger a quick discussion with that member can correct that misunderstanding.

> Section 4 doesn't follow the same paragraph numbering approach as most of rest of document. For example following the format of the preceding sections, 4.(a) should be 4.1.

DD: The layout of Section 4 of the merger agreement is intentional. The numbering throughout the documents uses an auto-formatted outlined number style, so the listing now in (a) - (e) (inclusive) could have appeared instead as 4.1 - 4.5. I placed each of these items in the "third" level division (by inserting an additional indent) due to the structure of this Section and the individual items.

The items in (a) - (e) are enumerated clauses, not independent provisions. Independent provisions, generally, appear in Sections (4, 5, 6) or subsections (i.e., 4.1, 4.2, etc.) but enumerated clauses, as incomplete sentences, are notated in a manner different from subsections as a signal to the reader. Using the formatting in this document, enumerated clauses that are tabulated (as discussed below) appear in this document, generally, as lowercase letters (e.g., a, b, c) although in certain instances (such as, for example, Section 1.10(a), the enumerated sub-clauses are notated using romanettes (i.e., (i), (ii)).

The items in clauses (a) - (e) all are introduced by the first part of Section 4. Enumerated clauses typically are drafted in one or two ways: the first method is to draft these as "integrated" clauses, which, in this case, would have appeared as a single paragraph and would have read in part: "Dumbstruck's obligation to effect the Merger is subject to the satisfaction (or waiver in writing by Dumbstruck) of the following conditions precedent (the "**Conditions Precedent**"): (a) Dumbstruck shall have received Member Documents properly and duly executed by each and all of the Members at or prior to the Closing; (b) each and all of the representations . . . . .". The second method is to draft these as "tabulated" clauses -- that is, as a vertical list where each clause stands alone.

Clauses 4(a) - (e) could have been "integrated" into the body of Section 4 (in which case they would have been notated as (a), (b), (c), etc.) but instead I drafted these as tabulated enumerated clauses (a vertical list) to make them easier to read, and I retained the enumerated clause notation.

A second reason for this structure is that having only one sub-part of any higher-level section is considered bad drafting "form", e.g., if Section had a subsection 4.1 but no subsection 4.2. Accordingly, drafting the introductory part of what currently is Section 4 as part of a Section 4.1 was not an option (i.e., inserting the start of the current Section 4 instead into a sub-section 4.1)

Paragraphs 2 and 3 of the Members Agreement follow the same method as Section 4 of the merger agreement for consistency throughout both documents.

> Instead of County of New York and Southern District of New York why not Albany County and Northern District of New York. It seems this was written for the convenience of the attorney, not the convenience of Dumbstruck. Although for this particular action (unlike general Dumbstruck actions) given that the majority of the investors in Doctored Apps are from the Albany area, maybe having it in NYC would dissuade actions.

DD: As counsel to Dumbstruck, this provision was drafted to provide what in my opinion is the most favorable position to Dumbstruck. There is no personal agenda (for my California clients, Los Angeles typically is the chosen forum, for my UK clients, London often is the selected forum, and for my China matters Hong Kong usually is selected).

Although "convenience" is one variable in the equation, the choice of forum involves other factors as well, such as multiple courts with experience in corporate disputes (or, in the case of Delaware, the Chancery Courts) involving the NY business corporation law, and access to lawyers with similar experience.  For example, if the chosen forum is Albany County, and Dumbstruck desires to engage litigation counsel based in Manhattan, then doing so will be more expensive as Dumbstruck is responsible for travel, lodging, per diems, and similar items incurred by that firm, because the lawyers will establish a temporary base camp in Albany from time to time.

Further, in any litigation commenced by a third party against Dumbstruck that relates to an agreement, it is possible that the other party initially will ignore the chosen forum provision and instead file the action in the most "convenient" jurisdiction for that party, causing Dumbstruck first to fight to transfer the case from that other forum to the governing forum under the agreement.

As I indicated in an earlier response, if Dumbstruck prefers I will revise this provision to provide instead for exclusive jurisdiction in Albany and the corresponding federal courts.  Let me know.

> Did Peter and Mike T. have any cash investments in Doctored Apps or just time, blood, sweat, and tears?

DD:  I think this matter is best discussed directly with Peter and Mike.  My understanding is that Peter and Mike each elected to forego receiving any "merger consideration" in connection with the merger; that is, they are not converting their interests in the LLC into shares of Dumbstruck.

> Member Agreement
>
> 2.(e) Is it necessary for us to rely on 501(a) accredited rules? It is highly likely that some of the members of Doctored Apps do not meet the criteria for accredited investors.

DD: This is a matter of federal and applicable state securities laws.  An exemption is required to issue securities because the securities are not public (this is a private placement).  So, Dumbstruck must make the issuance under and in accordance with the available exemptions.  Section 2(e) of the Members Agreement is a representation and a warranty made by the particular member of Doctored Apps that he / she / it qualifies for the exemption.

> 5.5 See comments about "Chosen Forum" above for Agreement and Plan of Merger.
>
> Lack of uniformity with numbering of sub paragraphs.

DD:  See responses above.

On Tue, May 16, 2017 at 11:09 PM, Key Kiarie <key@dumbstruck.com> wrote:
> David,
>
> Received, will respond back with additions, subtractions and/or modifications based on your comments below.
>
> Thanks. . . .
>
> KEY
>
> On Tue, May 16, 2017 at 4:20 PM, David Gibson <d10gibson@gmail.com> wrote:
>> Key and Peter,
>>
>>
>> Some observations and comments:
>>
>> Agreement and Plan of Merger

CONFIDENTIAL                                                                                                                                    KIARIE000724

4.(a) and 5.1.(c) why "all" rather than "representing 80% of the Doctored Apps Investment" or something similar? That would prevent some small investor from thinking they can hold the merger hostage in order to extract special consideration for ransom.

Section 4 doesn't follow the same paragraph numbering approach as most of rest of document. For example following the format of the preceding sections, 4.(a) should be 4.1.

Instead of County of New York and Southern District of New York why not Albany County and Northern District of New York. It seems this was written for the convenience of the attorney, not the convenience of Dumbstruck. Although for this particular action (unlike general Dumbstruck actions) given that the majority of the investors in Doctored Apps are from the Albany area, maybe having it in NYC would dissuade actions.

Did Peter and Mike T. have any cash investments in Doctored Apps or just time, blood, sweat, and tears?

Member Agreement

2.(e) Is it necessary for us to rely on 501(a) accredited rules? It is highly likely that some of the members of Doctored Apps do not meet the criteria for accredited investors.

5.5 See comments about "Chosen Forum" above for Agreement and Plan of Merger.

Lack of uniformity with numbering of sub paragraphs.

David Gibson

518-229-8410

**From:** Key Kiarie [mailto:key@dumbstruck.com]
**Sent:** Sunday, May 14, 2017 9:13 PM
**To:** David Gibson; Mike Dura; Peter Allegretti; Mike Tanski
**Subject:** Dumbstruck: Doctored Apps Revised Merger Agreement

Dumbstruck BofD:

Per our board meeting and the changes discussed/agreed, attached is the Merger doc for Doctored Apps.

I will produce a new board resolution once I have consensus on the document attached.

The revised draft the Merger Agreement between Dumbstruck and Doctored Apps has been redlined to reflect the changes to the prior draft based on the deal terms we discussed and include the following:

CONFIDENTIAL
KIARIE000725

1) Paragraph 1.10(a)(i) [Merger Consideration] -- Providing that the membership interests of Doctored Apps convert to shares of Dumbstruck based on the amount invested in Doctored Apps and the price paid per share for a share of Dumbstruck's Series Seed Preferred Stock in the Series Seed financing round, without applying any discount to the Doctored Apps members, and without taking into consideration discounts to the price per share of the Series Seed shares for the conversion of convertible promissory notes.

2) Paragraph 1.10(a)(i) and Schedule "1" ("Member Schedule") -- The Member Schedule formerly listed the number of shares of series seed preferred stock to be issued to each member in consideration of the merger, with the calculation completed in advance. Now that the price per share is pending, I revised the schedule to instead reflect each Doctored Apps member investment in Doctored Apps, which will be used to determine the number of shares of series seed preferred stock to be used to each Doctored Apps member.

Under the prior structure, this structure was necessary b/c it listed the number of shares of series seed preferred stock issuable and was the only source of this information. Under the new structure, I think you might be able to do without it, although having a "record" of each individual investment is, generally, a good thing for record keeping and should any issues arise in the future. Your choice. If the schedule stays as part of the agreement, the respective investment amounts need to be inserted.

3) Paragraph 1.10(b) [Payment of Merger Consideration] -- The changes here are intended to avoid any need to go back and revise further if the timetable for the merger or the Series Seed round change dramatically. The Doctored Apps members will receive their "merger consideration" -- which are the respective number of shares of Dumbstruck's series seed preferred stock -- the later of (i) the close of the series seed round, or (ii) the "effective time" of the merger, which basically is the closing of the merger and the filing of the necessary merger-related certificates with the NY Secretary of State ("Effective Time" is defined in Paragraph 1.3). This changes the prior schedule, which anticipated the merger closing well in advance of the series seed financing round and therefore did not include a "later of" scenario.

4) Paragraph 1.10(c) [Fractional Shares] -- Because this conversation now will occur in the more customary manner, I inserted a "no fractional shares" provision similar to that in the prior convertible promissory notes, so that Dumbstruck is not obligated to issue fractional shares and instead may round the number of shares to be issued up or down or pay the fractional amount.

In addition to the above: (i) before issuing the execution versions the applicable dates will need to be inserted into the agreement and the attachments (I can do this when I get the green light), including the "Merger Agreement Date" in the introductory paragraph of the merger agreement) and the date for the Action by Written Consent of each member of Doctored Apps, which is Annex "A-1" to the "Member Agreement" (which is Exhibit "A" to the merger agreement); and (ii) I also revised this Action by Written Consent to reference the "Merger Agreement Date" to avoid having another provision with a date that might otherwise need to be revised/updated manually.

Thanks. . . .

KEY

---

**3 attachments**

- 2017-05-30-Dumbstruck-Doctored-Apps-Merger-clean.docx
  51K
- 2017-05-30-Dumbstruck-Board-AWC-Merger-complete.pdf
  325K
- 2017-05-30-Dumbstruck-Doctored-Apps-Merger-redline.pdf
  614K

---

**Key Kiarie** <key@dumbstruck.com>  Tue, Jun 13, 2017 at 5:29 PM
To: Key Kiarie <kkiarie@gmail.com>

---------- Forwarded message ----------
From: **Mike Dura** <mfdura@hotmail.com>
Date: Wed, May 31, 2017 at 10:15 AM
Subject: Re: Dumbstruck: Doctored Apps Merger Agreement and Board Resolution
To: Key Kiarie <key@dumbstruck.com>
Cc: Peter Allegretti <peter@dumbstruck.com>, David Gibson <d10gibson@gmail.com>

Key,

    I have reviewed the documents and my only comment is that on page A-1 of Exhibit A captioned 'MEMBER AGREEMENT", relates to the sentence at the middle of the page beginning 'NOW THEREFORE..." - shouldn't it by 'Doktored Apps' member rather than 'Dumbstruck' member?

    Other than that, I am good with the docs. Let me know when you want the written consent executed and returned.

                                                        Mike

**From:** Key Kiarie <key@dumbstruck.com>
**Sent:** Tuesday, May 30, 2017 7:25 PM
**To:** David Gibson
**Cc:** Peter Allegretti; Mike Tanski; Mike Dura
**Subject:** Dumbstruck: Doctored Apps Merger Agreement and Board Resolution

[Quoted text hidden]

---

**Key Kiarie** <key@dumbstruck.com>     Tue, Jun 13, 2017 at 5:30 PM
To: Key Kiarie <kkiarie@gmail.com>

---------- Forwarded message ----------
From: **Key Kiarie** <key@dumbstruck.com>
Date: Wed, May 31, 2017 at 4:18 PM
Subject: Re: Dumbstruck: Doctored Apps Merger Agreement and Board Resolution
To: Mike Dura <mfdura@hotmail.com>
Cc: Peter Allegretti <peter@dumbstruck.com>, David Gibson <d10gibson@gmail.com>, Michael Tanski <michael@dumbstruck.com>

Mike,

Argh, yes, you are correct, it is missing a word and should read: "NOW THEREFORE, Dumbstruck **and** Member, intending...." The two signatories to each Member Agreement are Dumbstruck and the particular member of Doctored Apps.

The change has been applied and attached are the following:

1.) Doctored Apps Merger Board Resolution

2.) Doctored Apps Merger Agreement (clean)

3.) Doctored Apps Merger Agreement (redline)

If no other comments, than signature of the resolution is appreciated.

Great catch. . .

KEY

key kiarie


On Wed, May 31, 2017 at 10:15 AM, Mike Dura <mfdura@hotmail.com> wrote:
> Key,
>
>     I have reviewed the documents and my only comment is that on page A-1 of Exhibit A captioned 'MEMBER AGREEMENT", relates to the sentence at the middle of the page beginning 'NOW THEREFORE...'" - shouldn't it by 'Doktored Apps' member rather than 'Dumbstruck' member?
>
>     Other than that, I am good with the docs. Let me know when you want the written consent executed and returned.

CONFIDENTIAL
KIARIE000728

Mike

---

**From:** Key Kiarie <key@dumbstruck.com>
**Sent:** Tuesday, May 30, 2017 7:25 PM
**To:** David Gibson
**Cc:** Peter Allegretti; Mike Tanski; Mike Dura
**Subject:** Dumbstruck: Doctored Apps Merger Agreement and Board Resolution

[Quoted text hidden]

---

3 attachments

 2017-05-31-Dumbstruck-Board-AWC-Merger-Merger-Agreement-complete.pdf
325K

 2017-05-31-Dumbstruck-Doctored-Apps-Merger-clean.docx
51K

 2017-05-31-Dumbstruck-Doctored-Apps-Merger-clean.pdf
212K