UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
KIHARA KIARIE, et al.,                          :

                                                :           <u>OPINION AND ORDER</u>

                    Plaintiffs,                 :           19 Civ. 827 (ALC) (GWG)

                                                :

        -v.-                                    :

DUMBSTRUCK, INC., et. al,                       :

                                                :

                    Defendants.                 :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Kihara Kiarie brings this suit asserting a number of claims — including claims

under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and N.Y. Lab. Law

§ 190, et seq. ("NYLL") — against defendants Dumbstruck, Inc. ("Dumbstruck"); Peter

Allegretti; Michael Tanski; and Jeff Tetrault.  Now before the Court is Kiarie's motion to amend

the complaint to name two new defendants: Michael Dura and David Gibson.[1]  For the reasons

stated herein, Kiarie's motion is denied.

I.  <u>BACKGROUND</u>

        The complaint in this action was filed on January 28, 2019.  <u>See</u> Complaint, filed Jan. 28,

2019 (Docket # 1) ("Compl.").  A scheduling order was entered on April 30, 2019, which set the

---

[1]  Notice of Motion, filed May 8, 2020 (Docket # 58); Memorandum of Law in Support
of Plaintiff's Motion for Leave to Amend Complaint, filed May 8, 2020 (Docket # 60) ("Pl.
Mem."); Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to
Amend, filed May 29, 2020 (Docket # 61) ("Def. Mem."); Declaration of Peter Allegretti, filed
May 29, 2020 (Docket # 62); Reply Memorandum of Law in Further Support of Plaintiff's
Motion for Leave to Amend Complaint, filed June 9, 2020 (Docket # 64) ("Pl. Reply");
Declaration of Christopher Massaroni, filed July 8, 2020 (Docket # 73); Affirmation of Maurice
W. Heller, filed July 8, 2020 (Docket # 74).

fact discovery deadline as December 2, 2019, and the expert discovery deadline as February 28, 2020. See Scheduling Order, filed April 30, 2019 (Docket # 29) ("Scheduling Order"). It set the deadline for joining parties or filing amended pleadings as May 31, 2019. Id. On October 18, 2019, the Court extended the fact discovery deadline to January 15, 2020. See Memo Endorsement, filed Oct. 18, 2019 (Docket # 35) ("Fact Discovery Deadline Order"). On February 6, 2020, the Court extended the expert discovery deadline to June 5, 2020. See Order, filed Feb. 6, 2020 (Docket # 37). Neither order extended the May 31, 2019, deadline to join parties.

The instant motion to amend the complaint was filed on May 8, 2020 — nearly a year after the Court-ordered deadline for such amendments and nearly four months after the Court ordered the conclusion of fact discovery.[2]

## II. LAW GOVERNING MOTIONS TO AMEND

Several of the Federal Rules of Civil Procedure are applicable here.

Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing JennAir Prods. v. Penn Ventilator, Inc., 283 F. Supp. 591, 594 (E.D. Pa. 1968)). The decision to grant or deny leave to amend under Rule 15(a)(2) is within the trial court's discretion. See Zenith Radio Corp. v. Hazeltine Research,

---

[2] Some recent filings suggest that both Kiarie and the defendants believe that some additional discovery needs to be conducted (Docket ## 65, 69, 70), but neither side has made a proper application for any extension of fact or expert discovery deadlines, and it appears the remaining areas of discovery sought relate exclusively to damages.

Inc., 401 U.S. 321, 330 (1971).  A court may deny leave to amend for "good reason," which normally involves an analysis of the four factors articulated in Foman v. Davis, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party.  See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman, 371 U.S. at 178, 182).

"If the amendment seeks to add a party, Rule 21 of the Federal Rules of Civil Procedure, which allows addition of a party . . . also comes into play.  However, that creates no additional obstacle, as the 'showing necessary under Rule 21 is the same as that required under Rule 15(a).'"  Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (internal citation omitted) (quoting Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012)).

Finally, Fed. R. Civ. P. 16(b) provides that scheduling orders "must limit the time to . . . amend the pleadings."  Fed. R. Civ. P. 16(b)(3)(A).  Once it is entered, a scheduling order may be modified only for "good cause."  Fed. R. Civ. P. 16(b)(4).  "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (quoting Fed. R. Civ. P. 15 and 16).  The "good cause" inquiry turns on the diligence of the party seeking to modify the scheduling order.  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party.") (citations omitted).  In this case, the Court set a May 31, 2019, deadline for joining parties or filing an amended pleading.  See Scheduling Order ¶ 3(b).  Kiarie never sought an extension of this deadline.  Nonetheless, as we have explained in

a prior decision, we recognize that we have discretion to apply the more liberal standard that applies to motions to amend under Fed. R. Civ. P. 15 rather than the more exacting standard that applies to extending a deadline set under Fed. R. Civ. P. 16. See Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc., 304 F.R.D. 170, 176 (S.D.N.Y. 2014).

The parties debate whether the Rule 15 standard or the Rule 16 standard should be applied here. See Def. Mem. at 10-12; Pl. Reply at 1-3. It is not necessary to address this question because, as explained below, Kiarie's motion fails even under the liberal Rule 15 standard.

III.   DISCUSSION

The original complaint in this action brought — among other claims not relevant here — FLSA and NYLL claims against Dumbstruck as well as three individuals identified as "its principals": Peter Allegretti, Michael Tanski, and Jeff Tetrault. Compl. ¶ 4; see also id. ¶¶ 60-66 (FLSA claim); id. ¶¶ 67-73 (NYLL claim). Allegretti was the CEO of Dumbstruck at the time the complaint alleges Kiarie was hired. Id. ¶ 18.[3] The only substantive difference between the original complaint and the proposed first amended complaint is the addition of Dura and Gibson as individual defendants, as well as the new allegation that Dura and Gibson were both Kiarie's employer — and thus liable to Kiarie under the FLSA and NYLL. See First Amended Complaint [Proposed], filed July 8, 2020 (Docket # 74-1) ("Proposed FAC"). The defendants argue that the proposed amended is futile and that it was unduly delayed. See Def. Mem. at 17-

---

[3]  Though not made explicit in either the complaint or the proposed FAC, Tanski and Tetrault are apparently board members of Dumbstruck. See Pl. Mem. at 3 ("With the addition of Messrs. Dura and Gibson as defendants, all five individuals who served as directors at the time of Plaintiff's termination will have been joined in this action.").

18.  We agree with defendants on both points.

    A.  <u>The Proposed Amended Complaint Is Futile</u>

        1.  <u>Standard for Judging Futility</u>

When a party argues that an amendment to a pleading would be futile, the court must

determine whether any proposed claim could "withstand a motion to dismiss pursuant to [Federal

Rule of Civil Procedure] 12(b)(6)." <u>Dougherty v. Town of N. Hempstead Bd. of Zoning</u>

<u>Appeals</u>, 282 F.3d 83, 88 (2d Cir. 2002) (citing <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 941 F.2d 119,

123 (2d Cir. 1991)).  Pursuant to Rule 12(b)(6), a party may move to dismiss the opposing

party's pleading on the ground that it "fail[s] to state a claim upon which relief can be granted."

In deciding such a motion, a court must accept as true all of the allegations contained in the

complaint.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009).  But that principle does not

apply to legal conclusions.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) ("[A

party's] obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

(internal quotation marks, citation, and alteration omitted).  In other words, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice,"

<u>Iqbal</u>, 556 U.S. at 678 (citation omitted), and thus a court's first task is to disregard any

conclusory statements in the pleading, <u>see</u> <u>id.</u> at 679.

    Next, a court must determine if the complaint contains "sufficient factual matter" which,

if accepted as true, states a claim that is "plausible on its face." <u>Id.</u> at 678 (internal quotation

marks and citation omitted); <u>accord</u> <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>, 507 F.3d

117, 121 (2d Cir. 2007) ("[A pleading] must allege facts that are not merely consistent with the

conclusion that the [adverse party] violated the law, but which actively and plausibly suggest that

conclusion.") (citations omitted).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' — 'that the pleader is entitled to relief.'"  Id. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

### 2.  Law Governing the Claims Against the New Proposed Defendants

Under the FLSA, "an '[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term includes "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons."  See 29 U.S.C. §§ 203(a), (d).  The Second Circuit has held that an employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  The person or entity need not possess "formal control" over a worker to qualify as an employer; rather, the person or entity need only exercise "functional control" over the worker.  Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003).  "In the Second Circuit, courts generally interpret '[t]he statutory standard for employer status under NYLL [to be] nearly identical to that of the FLSA.'"  Jianjun Chen v. 2425 Broadway Chao Rest., LLC, 2019 WL 1244291, at *8 (S.D.N.Y. Mar. 18, 2019) (quoting Olvera v. Bareburger Grp. LLC, 73

F. Supp. 3d 201, 206 (S.D.N.Y. 2014)).

As this Court has described at length, see Fernandez v. HR Parking Inc., 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019), there are a number of factual circumstances that might indicate a person is the "employer" of a plaintiff.  The circumstances most pertinent to the instant case are those that address "formal control" over a worker.  Under the "formal control" test, a court considers whether the person "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Zheng, 355 F.3d at 67.

3.  Analysis

The proposed FAC is devoid of virtually any factual allegations regarding the actions of Dura and Gibson in relation to Kiarie's employment.  As to Gibson, there are literally none.  The proposed FAC alleges only Gibson's residence and states the legal conclusion that Gibson was Kiarie's "employer."  Proposed FAC ¶¶ 13, 64, 70.  As to Dura, the complaint makes the same allegations and adds only that "in a meeting in Manhattan on June 13, 2017 attended by Allegretti and Dura, Plaintiff's employment with Dumbstruck was terminated."  Id. ¶ 44.

The factual content in these allegations is plainly insufficient to "allow[] [this] court to draw the reasonable inference that" Dura or Gibson were Kiarie's employers.  Iqbal, 556 U.S. at 678.  More obviously, the proposed FAC contains no allegations that "actively and plausibly suggest [the] conclusion" that Dura and Gibson are liable as employers.  Port Dock & Stone Corp., 507 F.3d at 121.  Any motion to dismiss the proposed FAC as against Dura and Gibson would be swiftly granted.

Perhaps recognizing that any contrary argument would be frivolous, Kiarie offers little

support for the notion that the allegations of the proposed FAC meet the <u>Iqbal</u> standard.  Instead, he does what is patently impermissible in opposing a motion to dismiss: he argues there is evidence outside the record that could shore up the allegations of the complaint.  Pl. Reply at 9.  Thus, his brief argues that evidence outside the pleadings would allow him to allege that the defendants are each a "corporate officer with operational control of a corporation's covered enterprise" and that each is therefore an "employer" along with the corporation.  <u>Id.</u> at 10.  Of course, we do not consider any such evidence inasmuch as it is well-settled that in deciding a motion to dismiss, a court is limited to consideration of the allegations of the complaint, as well as certain other materials not relevant here.  See, <u>e.g.</u>, <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002).  The same principle applies to a proposed complaint challenged on "futility" grounds in the course of a motion to amend.  See, <u>e.g.</u>, <u>Max Impact. LLC v. Sherwood Grp., Inc.</u>, 2012 WL 3831535, at *4 (S.D.N.Y. Aug. 16, 2012) ("[I]n making futility determinations, the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits or incorporated by reference.") (citations omitted).

In something of a non sequitur, Kiarie also argues that if the proposed FAC is insufficient as to Dura and Gibson, the original complaint is insufficient as to the other individual defendants.  Pl. Reply at 9-10.  The Court agrees that original complaint may well be insufficient as to the other individual defendants.  But the fact that defendants chose not to make a motion to dismiss as to these defendants has no bearing on whether the proposed FAC currently before the Court meets the <u>Iqbal</u> standard as against Dura and Gibson.

Finally, Kiarie argues that "public policy" favors granting his motion, citing a 40-year old

case interpreting a former version of Fed. R. Civ. P. 21, which provided parties may be added "on such terms as are just." <u>Soler v. G & U, Inc.</u>, 86 F.R.D. 524, 528 (S.D.N.Y. 1980).  But as <u>Soler</u> noted, and as still is true today, motions to add parties under Rule 21 (which now uses a slightly different formulation insofar as it allows a court to add a party "on just terms") are governed by the same standards as those applicable to Rule 15.  <u>See</u> <u>Soroof Trading Dev. Co.</u>, 283 F.R.D. at 147 ("showing necessary under Rule 21 is the same as that required under Rule 15(a)") (internal quotation marks and citation omitted).  Thus "public policy," as expressed in the governing legal standard, requires denial of Kiarie's motion.

In sum, the proposed FAC is futile as its allegations against Dura and Gibson could not survive a motion to dismiss.  Accordingly, the motion to amend must be denied for this reason alone.

B.  <u>The Proposed Amended Complaint Was Unduly Delayed</u>

Kiarie's failure to state a claim against Dura and Gibson by itself mandates denial of the motion to amend.  Nonetheless, the motion to amend is denied for the separate and independent reason that Kiarie acted with undue delay in making the motion.

Kiarie asserts that he did not learn that "Mr. Dura and Mr. Gibson were personally involved, to a significant extent, in Plaintiff's hiring, setting his compensation, commenting on Plaintiff's performance and the decision to terminate him" until late in discovery, after deposition testimony was taken and documents were produced.  Pl. Mem. at 2-3.  Thus, Kiarie asserts he was not aware Dura and Gibson were his employers until "discovery made it abundantly clear that [Dura and Gibson] were not only advising Mr. Allegretti and other members of Dumbstruck's board but, in many instances, calling the shots."  Pl. Reply at 5; <u>see</u>

also id. at 4-5 ("[A]lthough Plaintiff was aware of Dura's and Gibson's positions as board members prior to the May 31, 2019 deadline, Plaintiff first learned about the significant extent of Dura's and Gibson's involvement (including details in Plaintiff's hiring, setting his compensation, views and comments on his performance, and eventual decisions to terminate him) and their integral link to the company at Mr. Dura's deposition that happened well after the deadline.").

The Second Circuit has instructed that motions to amend should be granted where "the amendment was proposed only after discovery revealed additional relevant facts" because, in such a case, "there has been no showing of . . . undue delay." Friedl v. City of N.Y., 210 F.3d 79, 88 (2d Cir. 2000); accord Ambac Assurance Corp. v. EMC Mortg. Corp., 2010 WL 11595698, at *5 (S.D.N.Y. Dec. 16, 2010) ("The most common reason that parties seek and are granted leave to amend their complaints is to conform the complaint to evidence obtained in discovery."), adopted by 2011 WL 566776 (S.D.N.Y. Feb. 8, 2011). However, "a court 'may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay.'" Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (quoting Berman v. Parco, 986 F. Supp. 195, 217 (S.D.N.Y. 1997)), aff'd in relevant part, 710 F. App'x 25 (2d Cir. 2018).

Thus, to determine whether Kiarie acted with undue delay in bringing this motion, we must assess whether he was presented with new information during discovery that alerted him for the first time that Dura and Gibson were his employers under the FLSA and NYLL. As previously noted, an employment relationship exists when the "economic reality" is such that the

10

"alleged employer possessed the power to control the workers in question."  Herman, 172 F.3d at

139 (citing Carter, 735 F.2d at 12).

With regard to the purportedly new information, Kiarie asserts that documents and

deposition testimony produced in discovery revealed Dura and Gibson's roles as his employers

well after the May 31, 2019, deadline to amend.  Pl. Mem. at 2-3.  Kiarie makes little effort to

marshal this evidence, to fix the date when this evidence came into his possession, or to reveal

what information he gained during the course of document discovery about these individuals that

he did not have before as a result of his communications with the defendants prior to the filing of

this suit.  Kiarie cites to three sources that he claims provided new information on Dura and

Gibson: the January 13, 2020, deposition transcript of Michael Dura (Docket # 74-4) ("Dura

Dep."); the January 14, 2020, deposition transcript of Michael Tanski (Docket # 74-5) ("Tanski

Dep."); and various emails in 2015 between Peter Allegretti, David Gibson, and Michael Tanski

that were apparently produced during discovery (Docket # 74-6) ("2015 Internal Emails").

Kiarie does not quote any specific testimony or statements in these documents that

substantiate the critical factual contention supporting his motion — namely, that Gibson and

Dura were his employers.  And, as has been explained in the summary judgment context, a

district court "is not required to scour the record on its own in a search for evidence" when a

party fails to present it.  CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 125

(2d Cir. 2013) (internal quotation marks and citation omitted).  Nonetheless, our own

examination of the documents at issue suggests that Kiarie could have made this motion far

sooner.

Dura testified during his January 13, 2020, deposition that he and Gibson invested in

11

Dumbstruck through the issuance of a bridge loan to the company in December 2017.  Dura Dep. at 28.  Dura became a Dumbstruck board member in January 2016, after previously serving as an advisor to the company.  Id. at 51.  Dura testified that prior to his appointment as a board member, while acting as an advisor to Dumbstruck, he gave his opinion on the initial hiring of Kiarie.  Id. at 76.  Dura also testified that he gave his opinion regarding Kiarie's proposed compensation in a June 22, 2015, email chain that included Gibson.  Id. at 82.  Dura testified that Gibson and Allegretti worked to prepare an employment agreement for Kiarie, id. at 93, and that once Dura assumed his role as a Dumbstruck board member in January 2016, he would have expected to see a finalized employment agreement for Kiarie, id. at 97.  Lastly, Dura testified he and Gibson were involved in a discussion with Allegretti about terminating Kiarie's employment, id. at 122, and that Dura was present at the June 2017 meeting at which Kiarie's employment was terminated, id. at 154.

At his January 14, 2020, deposition, Tanski testified that Gibson, acting as a board member, was involved in discussions about Kiarie's employment agreement.  Tanski Dep. at 43.

In emails from June, July, and August 2015 — which were presumably produced during document discovery and prior to the depositions — Gibson provides feedback on Kiarie's proposed compensation, 2015 Internal Emails at D_0000292, and Gibson indicates he discussed Kiarie's proposed compensation with Dura, id. at D_0000297.

While it is not specifically raised by this motion, it is doubtful that this evidence would even allow a jury to find that either Dura or Gibson were plaintiff's employers.  But we need not address that issue to decide the motion to amend.  What is critical is that Kiarie has not shown that any of the important material facts were unavailable to him when the original complaint was

filed or during the course of document discovery.

In fact, the record is clear that Kiarie was aware from the beginning that both Dura and Gibson were involved in the decision to initially hire him.  At his deposition, Kiarie stated that he was interviewed for the position of COO at Dumbstruck by Allegretti, Tanski, Dura, and Gibson.  See Transcript of Deposition of Kihara Kiarie, dated Jan. 8, 2020 (Docket # 73-5) at 60.  Dura and Gibson's presence and participation in Kiarie's initial interview were certainly a strong indication that they played some role in the decision to hire him.

Second, Kiarie was always aware that Dura and Gibson were involved in deciding the terms of his compensation.  In a June 23, 2015, email to Kiarie, Allegretti stated "he spoke with David [Gibson], the third board member" regarding the "terms [Kiarie] proposed" and that Allegretti had "came out very nearly on the same page with" Gibson with regard to Kiarie's proposed terms.  June 23, 2015 Email Chain Between Peter Allegretti and Key Kiarie (Docket # 73-9) ("2015 External Emails") at KIARIE000578.  Allegretti also stated "[t]he one holdout I still need to speak to is Mike Dura, our investor/advisor from the private equity world.  He's one of my closest advisors."  Id.  Kiarie subsequently replied that he was "happy to hear [Allegretti] ha[d] involved David and Mike.  There [sic] opinions and thoughts are critical."  Id. [4]

Thus, the emails cited by Kiarie as purportedly first revealing Dura and Gibson's role as his employer, see 2015 Internal Emails, add nothing to the emails Kiarie himself received.  Instead, they are simply internal emails that correspond to the external emails between Allegretti and Kiarie himself, see 2015 External Emails.  There are no new material facts reflected in the

---

[4]  It is not clear whether Kiarie is referring to Michael Tanski or Michael Dura.

internal emails about Dura and Gibson's role in the evaluation of Kiarie's terms of compensation beyond the role explicitly communicated to Kiarie in the external emails.  See 2015 External Emails at KIARIE000578.

Third, Kiarie was always aware that at least Dura was involved in the decision to terminate him.  The original complaint asserts that Dura was present at the June 13, 2017, meeting at which Kiarie's "employment with Dumbstruck was terminated."  Compl. ¶ 42.  Thus, Kiarie could infer that Dura was involved in the decision to terminate him, given Dura's presence at the meeting at which Kiarie was terminated.

Given the lack of material "newly discovered facts" prompting Kiarie's motion to amend, we conclude he has "been aware of the factual underpinnings of" potential claims against Dura and Gibson "since the outset of this litigation," and his motion to amend therefore must be denied.  Cty. of Washington v. Ctys. of Warren & Washington Indus. Dev. Agency, 2 F. App'x 71, 75 (2d Cir. 2001); accord Ramirez v. M L Rest., Corp., 2015 WL 12564227, at *1 (S.D.N.Y. Mar. 13, 2015) ("This is not a case where 'Plaintiffs learned about the putative employer status of the additional parties through discovery after the expiration of the scheduling order deadline.'") (quoting Salomon v. Adderley Indus., Inc., 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013)); Augustine v. AXA Fin., Inc., 2008 WL 5025017, at *6 (S.D.N.Y. Nov. 24, 2008) (denying motion to amend and add new employer defendants where plaintiff "had sufficient information to assert claims against the proposed individual defendants well in advance of the deadline to amend the Complaint.").

Finally, we note that even if Kiarie first became aware of facts required to make allegations against Dura and Gibson in January 2020, Kiarie offers no explanation for why he

14

waited approximately four months to file the instant motion.[5]  The four-month delay must be judged in the context of the stage of the case because the question of whether there has been undue delay requires consideration of any prejudice to defendants from the granting of a motion to amend.  Here, there would plainly be prejudice to the existing defendants because the two new defendants would be entitled to re-start the entire discovery process to obtain discovery from Kiarie and potentially from co-defendants.  Thus, "courts in this circuit routinely hold that motions to amend are untimely when filed after the close of discovery" and when the motion would require the re-opening of discovery.  Weaver v. Warrington, 2018 WL 5253110, at *1 (E.D.N.Y. Oct. 22, 2018) (collecting cases); accord Shi Ming Chen v. Hunan Manor Enter., Inc., 2020 WL 520854, at *3 (S.D.N.Y. Feb. 3, 2020) (denying motion to amend complaint and add new defendants after end of discovery period, where plaintiffs gave no explanation for delay); Bromfield v. Bronx Lebanon Special Care Ctr., Inc., 2019 WL 1873156, at *3-4 (S.D.N.Y. Apr. 26, 2019) (denying motion to amend and add new defendant after discovery had closed where "proposed amendment would require the reopening of discovery . . . and the re-deposition of plaintiff, the individual defendants and perhaps other witnesses as well."); Fabian v. City of N.Y., 2018 WL 2138619, at *11 (S.D.N.Y. May 9, 2018) (denying leave to amend to add new defendants where motion was made after close of discovery); Antrobus v. N.Y.C. Dep't of Sanitation, 2016 WL 5394697, at *11 (E.D.N.Y. Feb. 25, 2016) ("Prejudice is generally found

---

[5]  Kiarie asserts "[d]ocuments were produced in this matter by Defendants in . . . May 2020."  Pl. Reply at 6.  But Kiarie does not bother to identify which documents were produced in May 2020, or explain why the information available prior to the production of these documents was insufficient to allow him to make his motion to amend.  Thus, we consider January 2020 to be the period Kiarie contends he was first presented with the information required to make allegations against Dura and Gibson.

where the motion to amend comes . . . after many months or years of pre-trial activity" and "adds new parties.") (internal quotation marks and citation omitted); Aguilar v. Connecticut, 2013 WL 657648, at *8 (D. Conn. Feb. 22, 2013) (denying motion to amend where "permit[ting] an amendment at this late juncture would unduly delay the resolution of this litigation as discovery would have to be reopened."), aff'd, 557 F. App'x 71 (2d Cir. 2014); Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A., 2004 WL 2650884, at *1 (S.D.N.Y. Nov. 22, 2004) ("Prejudice may be found, for example, when the amendment is sought after discovery has been closed.") (internal quotation marks and citations omitted); Juncewicz v. Patton, 2002 WL 31654957, at *6 (W.D.N.Y. Oct. 8, 2002) (denying motion to amend where "plaintiffs offer no adequate justification for waiting two months after the close of discovery to seek leave to amend.") (citation omitted).  And contrary to Kiarie's statement that "the parties are just approaching the end of fact discovery," Pl. Reply at 8, the Court ordered the close of fact discovery in January 2020, see Fact Discovery Deadline Order.  While the Court has permitted some limited additional discovery in light of Kiarie's prior failure to comply with his discovery obligations, see Docket # 57, fact discovery otherwise closed in January and expert discovery closed more than a month ago.  In any event, what limited discovery Kiarie is apparently seeking (see Docket ## 69, 70) is relatively narrow, relating only to damages.  All depositions have been taken.  It would obviously prejudice the existing defendants to have discovery re-started from scratch now.

Kiarie asserts that defendants' claims that they would be prejudiced are "conclusory, baseless, and speculative" because "we have not heard anything from Messrs. Dura or Gibson directly setting forth how they would conduct their case and why."  Pl. Reply at 8-9.  But there is no requirement that parties sought to be added to a case respond to a motion to amend, and

16

Kiarie points to no case so holding.  This is not surprising because if we accepted Kiarie's argument, it would mean that the absence of affidavits from proposed defendants would require courts to grant motions to amend and hale these potential new defendants into court — only to discover later the enormous prejudice that has been unleashed based on the new defendants' plans to litigate the case.  As the case law cited above demonstrates, that is not how prejudice is assessed in the context of a motion to amend.

In support of his motion, Pl. Mem. at 4, Kiarie cites to <u>Miteva v. Third Point Mgmt. Co., L.L.C.,</u> 219 F.R.D. 64, 65 (S.D.N.Y. 2003).  But <u>Miteva</u> granted the plaintiff's motion to amend because it found "no evidence in [plaintiff's] request to suggest undue delay, bad faith, futility or undue prejudice to" defendant.  <u>Id.</u>  Here, as already discussed, the amendment would be futile, Kiarie acted with undue delay, and defendants would suffer undue prejudice.

Accordingly, Kiarie's motion to amend is denied based on its futility, Kiarie's undue delay in bringing the motion, and the resulting prejudice defendants would face if it were granted.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, Kiarie's motion to amend (Docket # 58) is denied.

SO ORDERED

Dated: July 20, 2020
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

17